This was a proceeding by foreign attachment instituted in March 1833, in the Circuit court of law and chancery for the county of Henrico and City of Richmond, by Samuel S. Myers Co., against Thomas Dixon, an absent defendant, and John and Samuel Cosby. The pleadings and proofs make out the following case:
Samuel S. Myers Co. were manufacturers of tobacco in the City of Richmond; and in the beginning of the year 1832, they made a contract with Thomas Dixon of the City of Boston, through his agent Charles Palmer, a commission merchant in the City of Richmond, by which they agreed to sell to Palmer for *Page 241 
Dixon all the stems they should prize during that year, at 1 dollar 75 cents per 100 pounds, and 75 cents per hogshead storage; they reserving the right to send to their father in Baltimore fifteen or twenty hogsheads. Myers Co. proceeded from time to time, as the stems were on hand, and the weather was suitable, to prize the stems in hogsheads averaging about 1300 pounds net; and they stored them in a separate part of their extensive factory, until such time as it was convenient for Palmer to ship them; and when he was about to remove them, they were weighed and marked.
It appears that according to the custom in Richmond, it was the right of the manufacturer to weigh and mark the hogsheads directly they were taken from the press, and then to present the bill for payment; but for the convenience of the shipper the large manufacturers seem not to have weighed or marked the hogsheads until he was ready to remove them; and in the mean time to consider them as on storage from the time the stems were prized.
Myers Co. carrying on a large business, and being possessed of a large capital, seem to have permitted Palmer to consult his convenience as to the removal of the stems; and he removed them when an opportunity to ship them occurred. But reciprocating the spirit in which they dealt with him, he sometimes made advances to them on account of the stems prized, before they were weighed and marked, and therefore before they presented, a bill; whilst on the other hand a bill was sometimes not presented until the stems were shipped. Both these acts were, however, a departure from what was understood to be the rule: That was, that the bill for the price of the stems and the storage might be presented at any time after the stems were prized; but the purchaser was not bound to pay until the bill was presented; and that necessarily involved the weighing and marking the hogsheads. *Page 242 
On the 24th of November 1832, the factory of Myers Co., with its contents, was consumed by fire. At that time there were in the factory fifty-six hogsheads of stems, besides seventeen hogsheads which had been set aside for Mr. Myers of Baltimore. These fifty-six hogsheads had been stored away in the part of the factory building appropriated to storage; and a few days before the fire occurred Palmer was at the factory, and had, with one of the superintendents in the establishment, counted them; and then urged this superintendent to press on the work of prizing the stems, so that he might have one hundred hogsheads ready by the approaching Christmas: But these fifty-six hogsheads were not weighed or marked.
The plaintiffs in their bill stated that these hogsheads were of the average weight; and this was sustained by the proofs. They claimed that the sale to Palmer for Dixon had been perfected; that the stems were Dixon's stems, in their hands on storage; and that he was their debtor for the price of the fifty-six hogsheads of stems and the storage, amounting to 1266 dollars; for satisfaction of which they attached the effects of Dixon in the hands of the defendants John and Samuel Cosby. Dixon in his answer denied that the sale had been perfected, or that the stems were his property; and that was the only question in the cause. The cause came on to be heard in June 1844, when the Court held that the sale of the fifty-six hogsheads of stems was complete so soon as the stems were prized and turned from under the screws; and were thenceforth, and when burned, at the hazard and risk of the defendant Dixon; and that he should bear the loss arising from their destruction: And taking the value of the stems upon the evidence, to be at least 1266 dollars, the Court gave the plaintiffs a decree against Dixon for that amount, with legal interest thereon from the 5th day of February 1833, until paid, and their costs. *Page 243 
Whereupon Dixon applied to this Court for an appeal, which was allowed.
Where a contract is made for the purchase of an article hereafter to be delivered and paid for, so long as any act remains to be done by the vendor in order to put it in a state of readiness for delivery, or the amount of the purchase money remains yet to be ascertained, by the enumeration, measurement or weighing of the article, the general rule is, that the property does not pass to the buyer, but still remains at the risk of the seller.
It does not seem to the Court that there is anything in the case before us to exempt it from the influence of this rule.
Here the contract was for the purchase of an article yet to be prepared. The appellant by his agent Palmer, contracted with the appellees, for the purchase of all the tobacco stems they might prize during the year 1832, (with the exception of a number of hogsheads not exceeding twenty, which the appellees reserved to themselves the right to send to their father in Baltimore,) at one dollar and seventy-five cents per hundred pounds, and seventy-five cents per hogshead storage. There was nothing in the terms of the contract to bind the appellees to prepare any given quantity of stems, and had they at any time after the contract was made, consulting their own interests alone, discontinued the manufacture of tobacco and thus failed to have any stems prepared, the appellant; however much disappointed thereby, would have had no legal ground of complaint against them. And though it appears that Palmer was in the habit of occasionally *Page 244 
advancing to the appellees money on account of steins before the bills were presented, there is nothing in the terms of the contract to shew that he was bound to do so, or could be called upon to make any payment, until notified in some way that stems were prepared, prized, weighed and ready for his acceptance.
At the time when the fire occurred fifty-six hogsheads of stems had been prepared, prized, and set apart in the storing room of the appellees attached to their factory, as stems designed for the appellant; and they had been pointed out to Palmer, as such, when on a visit to the factory a short time before the fire, which he made with a view to ascertain how far the preparation of the stems had progressed. The hogsheads however had not been marked as the stems of the appellant, nor had the stems been weighed.
What was the state of the accounts between the parties at the date of the fire does not appear. As, however, the demand is asserted only for the price of the fifty-six hogsheads, estimating them at a supposed average weight, and their storage, and there is no other reference in the pleadings and proofs to the state of accounts, the inference is, there was not any balance on account of the previous dealings in the stems on either side.
It appears that the wishes of Palmer were consulted, and the benefit of his principal to some extent promoted by the habit which seems to have prevailed with the appellees, of deferring the weighing of the hogsheads till Palmer might be ready to ship them. But there is nothing to shew that such habit originated in any obligation imposed by the terms of the contract, or that the appellees did not have a perfect right to have weighed the stems as soon as they were prized, and to have then demanded their price.
It thus seems to the Court that there is no feature in the case to distinguish it favourably for the pretensions *Page 245 
of the appellees from the ordinary case of a contract for the purchase by weight of goods to be thereafter prepared and delivered and paid for on delivery, in which the weighing had not taken place at the period to which the questions of property and of consequent risk are to be referred.
The Court is therefore of opinion that at the date of the fire the stems in question were not the property of the appellant, remaining with the appellees on account of and at the risk of the appellant, but were still the property of the appellees; and consequently that the Circuit court erred in rendering a decree in favour of the appellees for the price.
Decree reversed with costs, and bill dismissed.